# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) |
| v. | ) <br> ) Docket No. 2:13-cr-163-NT |
| COREY EUSTIS, | ) <br> ) |
| Defendant | ) <br> ) |

## ORDER ON DEFENDANT'S MOTION
## FOR REVIEW OF DETENTION ORDER

The Defendant moves for review, pursuant to 18 U.S.C. § 3145(b), of the September 26, 2014 detention order of Magistrate Judge James R. Klindt of the Middle District of Florida. I have reviewed and considered the Magistrate Judge's pretrial detention order, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Magistrate Judge; and I concur with the Magistrate Judge's decisions that the Government proved by clear and convincing evidence: (1) that the Defendant violated the condition of release that required no contact, direct or indirect, with the victim/witness J.R., and (2) that that there is no condition or combination of conditions which would reasonably assure the safety of any other person and the community.

### TESTIMONY AND EVIDENCE RECEIVED AT THE HEARING

On September 25, 2014, the Defendant was brought before United States Magistrate Judge James R. Klindt on the Government's motion to revoke the Defendant's bail. Judge Klindt held a hearing to determine: (1) whether the

Defendant had violated his conditions of pretrial release and, if so, (2) whether there were conditions of release that would assure the safety of the community and the Defendant's appearance as required or whether the Defendant was unlikely to abide by any conditions or combination of conditions of release.

The Government presented the testimony of United States Probation Officers Stacey Graf and Timothy Duff and offered into evidence eight exhibits. Counsel for the Defendant called one witness, the Defendant's father, Jeff Eustis.

Officer Graf established the existence of the Order Setting Conditions of Release, which was entered into evidence as Govt. Ex. 2.[1] Condition 7(g) of that Order provided that the Defendant "must . . . avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including Jannelle Robinson." Tr. at 23.[2] Officer Graf further testified to phone numbers known for the Defendant and for Jannelle Robinson. Tr. at 24-25.

Officer Duff testified that the United States Probation Office in the District of Maine was contacted by a girlfriend of the Defendant, R.B., who informed the Probation Office that the Defendant had come to live with her in Texas. Tr. at 40-41. Officer Duff testified that R.B. provided him with a copy of the Defendant's flight itinerary, which suggested that the Defendant had a reservation on a flight from Portland, Maine to Dallas, Texas on August 14, 2014. Govt. Ex. 3. R.B. also provided

---

[1] The exhibits from the hearing are on file with the United States District Court for the Middle District of Florida in <u>United States v. Corey Eustis</u>, 3:14-mj-1190-JRK (ECF No. 14).

[2] The transcript from the hearing is on file with the United States District Court for the Middle District of Florida in <u>United States v. Corey Eustis</u>, 3:14-mj-1190-JRK (ECF No. 22).

Officer Duff with a copy of a Craig's List advertisement for an apartment in Melissa, Texas where R.B. intended to reside with the Defendant. Govt. Ex. 4; Tr. at 41. Officer Duff testified that R.B. told him that she had answered a call which came in on the Defendant's phone and she suspected the caller was Jannelle Robinson. R.B. told Officer Duff that the Defendant later admitted to her that the caller was Jannelle Robinson. Tr. at 43. R.B. told Officer Duff that she officially broke up with the Defendant on September 1, 2014 based on his admission that he had been in contact with Jennelle Robinson. Tr. at 47-48. R.B. also reported that she observed the Defendant consuming alcohol every night since he arrived in Texas up to their separation. Tr. at 47. R.B. reported that she had dropped the Defendant off at a hotel in McKinney, Texas. Tr. at 48.

According to Officer Duff, after R.B. contacted the Probation Office in Maine, probation officers from Plano, Texas paid a visit to the Defendant at his hotel in McKinney. Tr. at 44 & 48-49. The Defendant told the Texas Probation Officers that he had been visiting his aunt, R.B. in Texas, though he was unsure of his aunt's contact information. Tr. at 50-51.

R.B. reported to Officer Duff that subsequent to the visit by Texas probation officers, the Defendant sent her threatening text messages. Tr. at 44-45. The Government introduced screen shots of the messages which R.B. reported that she had received from the Defendant. One of those messages stated in part: "Get it straight people kill people for putting people in jail . . ." Govt. Ex. 5. The other message said: "Thanks! If I go to jail I'll make sure to say hello wen I'm out . . ." Govt. Ex. 6.

3

The Defendant's father, Jeff Eustis, testified that the Defendant went to Texas to visit his girlfriend, R.B. for a couple of weeks. Tr. at 76. Jeff Eustis testified that the Defendant contacted him and told him that R.B. was causing a lot of problems and he needed a ride home to Jeff Eustis's home in Florida. Tr. at 77. Jeff Eustis agreed to go and get the Defendant in Texas and bring him home to Jacksonville, Florida. Tr. at 78.

Jeff Eustis also testified that he contacted Jennell Robinson on behalf of his son and using his son's phone on a number of occasions. Tr. 81-82. On further questioning by the Magistrate Judge, Jeff Eustis indicated that he had contacted Robinson approximately seven times using his son's phone. Tr. at 92-94.

Records of phone calls and text records for August and September of 2014 for the Defendant's phone were admitted into evidence. Govt. Exs. 7 & 8.

## ANALYSIS

The Magistrate Judge focused on the pretrial release condition that the Defendant not contact Jannelle Robinson. He reviewed the phone records and he concluded that approximately one week after the entry of the Order Setting Conditions of Release, the Defendant's phone placed a call to Jannelle Robinson's phone. Tr. at 143. Between August 7, 2014 and September 18, 2014, the Defendant's phone contacted Jannelle Robinson's phone 76 times. Govt. Ex. 7. In roughly that same period, the Defendant's phone sent 821 text messages to Jannelle Robinson's phone. Govt. Ex. 8. While some of those contacts could be explained away by the Defendant's father's claim to have used the Defendant's phone to contact J.R. several

4

times, the only reasonable inference from the weight of the evidence was that the Defendant was blatantly disregarding the no-contact order throughout August and September of 2014. Tr. at 144.

Judge Klindt did not rest his conclusion that there were no conditions which would assure the safety of another person or the community solely on the fact that the Defendant was not abiding by the existing conditions. In addition to noting the new threats that the Defendant had made to R.B., his girlfriend in Texas, the Magistrate Judge noted the Defendant's past criminal history which included probation violations, violations of conditions of release, and serious crimes of domestic violence. Tr. at 145-146.

The finding by Judge Klindt that the Defendant was unlikely to abide by any condition or combination of conditions of release is supported by the fact that the Defendant immediately and flagrantly violated the no-contact order within about a week of his release. As Judge Klindt stated: "The conditions that this court might impose are only as good as the defendant's willingness to abide by those conditions." Tr. at 145. Judge Klindt's finding that there was no condition or combination of conditions which would reasonably assure the safety of another or the community was well-supported by the record. Because Judge Klindt's conclusions are amply supported by the record, I see no need for a supplemental evidentiary hearing.

## CONCLUSION

5

Accordingly, after *de novo* review of the Magistrate Judge's decision, the Court **AFFIRMS** the detention order entered in the Middle District of Florida and declines the Defendant's invitation to issue an amended order with conditions of release.

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent possible, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for a court appearance.

**SO ORDERED**.

/s/ Nancy Torresen  
United States Chief District Judge

Dated this 23 day of January, 2015.